**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:07CV-P109-R**

**RICKEY BERNARD JONES**                                                                           **PLAINTIFF**

**v.**

**KENTUCKY DEPARTMENT OF CORRECTIONS** *et al.*                              **DEFENDANTS**

**MEMORANDUM OPINION**

This matter is before the Court for screening of the complaint (DN 1) and amended complaint (DN 5) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the Court will dismiss Plaintiff's Fourteenth Amendment and retaliation claims and will allow his Fourth and Eighth Amendment claims to proceed.

**I. SUMMARY OF CLAIMS**

Plaintiff Rickey Bernard Jones, a convicted state inmate, filed a *pro se* action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights during and following three urinalysis tests for substance abuse while a prisoner at the Kentucky State Reformatory ("KSR"). He brings suit against the following twenty Defendants: the Kentucky Department of Corrections ("KDOC"); KSR Warden Larry Chandler; KSR Deputy Warden Linda DeWitt; Beverly Purvis, Assistant Specialist Supervisor; Lt. Mark Ash, Adjustment Committee Chairman; Corrections Officer ("C/O") Heather Swinney, Adjustment Committee Member; Lt. Carlos Schantz, CTO Amy Robey, and C/O Jeffrey Edgar, fill-in Adjustment Committee Members; C/O Class; Sgt. Lewis; C/O Jeremy McGill; Sgt. Joseph Woods; Sgt. Cole Estill; Sgt. Kevin Mazza, Urinalysis Coordinator; Lucy Streitenberger, Unit D Segregation Supervisor; Aegis Analytical Laboratories; and Matissa McCord, Kenneth Caruthers, and

Carmela Trimble, employees of Aegis. Plaintiff sues all Defendants in their individual and official capacities. As relief, Plaintiff seeks compensatory and general damages, vacation and expungement of his prison infraction, and the prevention of retaliation against him as a result of filing this action.

Plaintiff reports that in December 2004, January 2005, and February 2005, he was administered urinalysis testing for substance abuse. He claims that Defendant Mazza was responsible for having issued three "consecutive harassing urinalysis testing procedures within a period of ninety [] days." Plaintiff claims that these tests were not random, were for harassment, and were conducted in an unreasonable manner.

Plaintiff describes only the February 2005 test with specificity. To wit, on February 24, 2005, Defendants McGill and Woods ordered Plaintiff to take the test and took the specimen away. Two days later, Defendants Class and Lewis ordered Plaintiff to sign the Aegis chain-of-custody form. Plaintiff demanded a retest because of the break in the chain of custody, but no retest was performed. He was told to sign the paperwork or be placed in segregation. He signed the paperwork. The test came back positive for marijuana, and Plaintiff received a disciplinary write-up.

Defendant Estill investigated the disciplinary report on March 20, 2005, and failed to provide all chain-of-custody reports from Aegis. At the adjustment committee hearing on April 20, 2005, Defendants Schantz, Edger, and Robey refused to call Defendants Lewis and Class as witnesses, found Plaintiff guilty, and ordered him to serve 45 days in disciplinary segregation and to forfeit 60 days of good-time credits. Plaintiff appealed the decision. He advises that Defendant Deputy Warden DeWitt "sat in for Warden Larry Chandler." Documentation attached

to the complaint reveals that DeWitt denied the appeal on May 27, 2005. Plaintiff reports filing a Declaratory Judgment action in the Oldham Circuit Court, raising due process challenges to the disciplinary proceeding. The circuit court dismissed the action on May 2, 2006, and his appeal was ultimately denied by the Kentucky Supreme Court on April 19, 2007.

Plaintiff additionally complains about the conditions of his confinement while serving his time in segregation. He advises that Defendant Strietenberger is the Unit D Segregation Supervisor. He reports that inmates in segregation were exposed to "[a]ll kinds of bugs and vermin"; were not properly fed; were not able to get haircuts; were not able to take showers because there was no hot water; and were exposed to extreme cold because the windows were broken in the cells. He claims that "inmates were hanging themselves because it was extremely cold." He further alleges that he was stripped of his regular weekend visits, nightly telephone privileges, and canteen privileges, as well as denied access to vocational and college courses, the gymnasium, the library, and his job as an inmate legal aide. He claims that Defendant Purvis, Administrative Specialist Supervisor, took away his visitation privileges for six months. Plaintiff finally alleges having to stay in segregation for two days longer than he should have in retaliation for having filed grievances regarding the conditions.

As relief, Plaintiff seeks damages and an injunction vacating the prison infraction, expunging the incident from his institutional file, and prohibiting retaliation by Defendants as a result of filing this action.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

**A.     Fourteenth Amendment**

Plaintiff alleges that Defendants violated his due process right to a fair administrative hearing by denying him the opportunity to call witnesses, withholding documentary evidence, depriving him of the opportunity to marshal facts, breaking the chain of custody of the urine sample, altering forms, and failing to produce evidence. Due to the alleged violations, Plaintiff lost good-time credits and was placed in segregation which he maintains was an atypical and significant hardship in relation to the ordinary incidents of prison life.

**1.  *Heck v. Humphrey***

A restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Sandin v. Conner*, 515 U.S. 487 (1995). The loss of good time credits affects the length of Plaintiff's prison sentence; thus he has a protected liberty interest in this regard. *Sandin*, 515 U.S. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). A liberty interest may also be created if the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Upon consideration of the allegations in the complaint, the Court cannot conclude at this time that Plaintiff has failed to demonstrate that his duration in disciplinary segregation did not constitute the type of atypical and significant hardship requiring due process protection.

5

Even though the Court concludes that Plaintiff has demonstrated liberty interests entitled to due process protection, there is still a barrier to his Fourteenth Amendment claim. A state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). While not all claims challenging a prisoner's conviction or sentence will necessarily demonstrate the invalidity of the judgment, *id.* at 487 n.7, if a ruling on a claim would necessarily render Plaintiff's continued confinement invalid, the claim must be dismissed, not for lack of exhaustion of state remedies, but because it is simply not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 487.

In *Edwards v. Balisok,* 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison administrative proceedings. If the inmate's allegations would "necessarily imply the invalidity of the punishment imposed" the claim is not cognizable in a civil action under § 1983. *Id.* at 648.

More recently in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82.

6

In the instant case, Plaintiff seeks an order vacating and expunging his disciplinary infraction and damages for alleged due process violations. Without commenting on the merits of such a claim, were the Court to find in favor of Plaintiff and conclude that Defendants violated his due process rights by engaging in the conduct summarized above, such an action would necessarily demonstrate the invalidity of Plaintiff's disciplinary action and duration of his confinement since the ultimate result would be return of his lost good-time credits. Plaintiff's sole remedy for return of good-time credits is a writ of habeas corpus. The due process claim must, therefore, be dismissed for failure to state a cognizable claim upon which relief may be granted.

**2. Statute of limitations**

Alternatively, to the extent that *Heck* and its progeny do not bar some or all of Plaintiff's Fourteenth Amendment claims, those claims are untimely.

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal-injury cases in the state in which the cause of action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1)(a). *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Although state law establishes the statute of limitations for § 1983 actions, federal law controls on the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). Federal law establishes that the § 1983 statute of limitations accrues when the plaintiff knew or should have known of the injury that forms the basis of the claim alleged in the complaint. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). When the face of the complaint shows that an action is time-barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Additionally, under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999). "Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust 'such administrative remedies as are available.'" *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (quoting § 1983). Consequently, the statute of limitations is "tolled for the period during which his available state remedies were being exhausted." *Id.*

In the disciplinary proceeding context in the Kentucky Department of Corrections, available administrative remedies are exhausted by appealing the adjustment committee decision to the warden, and the "[w]arden or his designee shall respond in writing within thirty (30) days of the Adjustment Committee or Adjustment Officer decision." Kentucky Corrections Policies and Procedures ("CPP"), Policy No. 15.6(II)(F)(4) (eff. Feb. 3, 2006). "An appeal may not be taken beyond the [w]arden." CPP 15.6(II)(F)(7).

In the instant case, Plaintiff attached documentation to his complaint and amended complaint demonstrating that he appealed the adjustment committee's April 20, 2005, decision to the warden and that, on May 27, 2005, Deputy Warden DeWitt, who Plaintiff reports was sitting in for Warden Chandler, denied the appeal. Attachments further reveal that Plaintiff filed a Declaratory Judgment action challenging the disciplinary proceeding; that the Oldham Circuit Court denied the action by order entered May 2, 2006; that by order entered January 10, 2007, the Kentucky Court of Appeals dismissed the appeal as untimely; and that the Kentucky Supreme Court denied Plaintiff's motion for an enlargement of time by order entered April 19, 2007.

The PLRA requires exhaustion of available *administrative* remedies only, not *state court* remedies. Thus, Plaintiff's state court action did not toll the statute of limitations. The limitations period, therefore, began running on May 27, 2005, when Defendant DeWitt denied the administrative appeal of the adjustment committee's decision, and expired one-year later on May 27, 2006. By not filing the instant action until well over a year later,[1] the Fourteenth Amendment challenge is untimely.

**B.     Retaliation**

    **1. Damages**

Plaintiff alleges having to stay in segregation for two days longer than he should have in retaliation for having filed grievances regarding the conditions in segregation.

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "In a retaliation claim . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Id.* (emphasis in original).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.*

---

[1] Under the "prison mailbox rule," "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Plaintiff certifies that the complaint was delivered to the prisoner mail system for mailing on July 2, 2007.

Although the Court finds that Plaintiff was engaged in protected conduct by filing grievances, it cannot find that keeping Plaintiff in disciplinary segregation two days longer than sentenced constitutes an action that would deter a person of ordinary firmness from continuing to file grievances. Accordingly, the retaliation claim will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Injunctive relief

Plaintiff asks the Court to enter an injunction prohibiting Defendants from retaliating against him for filing this action. An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another facility. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Because Plaintiff is now incarcerated at the Kentucky State Penitentiary, not KSR where Defendants are located, Plaintiff would derive no benefit from the Court granting the requested relief, and his claim for injunctive relief must be dismissed.

### C.     Fourth Amendment

Plaintiff claims that he underwent three "consecutive harassing urinalysis testing procedures within a period of ninety [] days." Plaintiff claims that these tests were not random, were for harassment, and were conducted in an unreasonable manner. Upon consideration, the Court will allow the Fourth Amendment claim to proceed against Defendants Mazza, McGill, and Woods in their individual capacity for damages. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 617 (1989) ("Because it is clear that the collection and testing of urine

intrudes upon expectations of privacy that society has long recognized as reasonable, . . . these intrusions must be deemed searches under the Fourth Amendment.").

The official-capacity claim for damages will be dismissed on two bases: (1) Defendants, as state officials sued in their official capacities for damages, are absolutely immune from liability under the Eleventh Amendment to the United States Constitution, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); and (2) Defendants, in their official capacities for damages, are not "persons" subject to suit within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

**D.     Eighth Amendment**

The Court liberally construes Plaintiff's complaint as also alleging an Eighth Amendment, conditions-of-confinement claim pertaining to his time in segregation. The Court will allow the Eighth Amendment claim to proceed against Defendant Strietenberger, KSR's Unit D Segregation Supervisor, and Defendant Purvis, Administrative Specialist Supervisor, in their individual capacities for damages.

As with the Fourth Amendment official-capacity claim for damages, the Eighth Amendment official-capacity claim will be dismissed based on Eleventh Amendment immunity and because Defendants, in their official capacities for damages, are not "persons" subject to suit within the meaning of § 1983.

## IV. **CONCLUSION**

The Fourteenth Amendment claims will be dismissed as barred by *Heck* and its progeny or, alternatively, as barred by the statute of limitations. The retaliation claim will be dismissed for failure to state a claim upon which relief may be granted.

The Fourth Amendment unreasonable search and seizure claim will proceed against Defendants Mazza, McGill, and Woods in their individual capacity for damages, and the Eighth Amendment conditions-of-confinement claim will continue against Defendants Strietenberger and Purvis in their individual capacities for damages.[2]

A separate Scheduling Order will be entered to govern the development of continuing claims, and a separate Order will be entered dismissing all other claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005

---

[2] Because the record does not reflect how long the exhaustion process lasted and, thereby, tolled the limitations period, it cannot, on the face of the complaint, determine the timeliness of either the Fourth or Eighth Amendment claim.